UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       v.<br><br>IGOR FRUMAN,<br><br>                          Defendant. | No.  S1 19 Cr. 725 (JPO) |

**DEFENDANT IGOR FRUMAN'S SENTENCING MEMORANDUM**

-i-

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 2

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

    A.     The Guidelines are inappropriately high because of the fraud loss amount. ........... 5

    B.     Mr. Fruman's family would suffer unfair collateral consequences if he is sentenced to additional time in prison. ....................................................................................... 6

    C.     Under 3553(a) a sentence of time served satisfies the goals of sentencing and is otherwise a just sentence. ................................................................................................ 8

        1.     The Guidelines' range overstates the seriousness of the offense. ................ 9

        2.     Just punishment and adequate deterrence have already been achieved. ...... 9

    D.     Mr. Fruman's financial resources are limited due to the length of his home confinement and no fine should be imposed. ......................................................... 12

CONCLUSION .............................................................................................................. 13

**TABLE OF EXHIBITS**

A.    **Character Letters**

1. Ltr. from Daniel Gil Fruman, dated Dec. 25, 2021.

2. Ltr. From Rabbi Yosef Misholovin, dated December, 2021.

3. Ltr. from Gisele Fruman, dated Jan. 4, 2022.

4. Ltr. from Rabbi Alexander Kaller, dated Dec. 29, 2021.

5. Ltr. from Robert Fruman, dated Nov. 27, 2021.

6. Ltr. from Rabbi Fully Eisenberger, dated Dec. 13, 2021.

7. Ltr. from Artur Fruman, dated Oct. 1, 2021.

8. Ltr. from Rabbi Moshe Reuven Azman.

9. Ltr from Natalie Parvizian, dated Nov. 2, 2021.

10. Ltr. from Milena Shlafer, dated Dec. 22, 2021.

11. Ltr. from Rabbi Menachem Mendel Cohen, dated Oct. 9, 2021.

12. Ltr. from Mikhail Mark Barash, dated Jan. 4, 2022.

13. Ltr. from Yuri Umanski, dated Nov. 20, 2021.

14. Ltr. from Fiona Fruman, dated Dec. 18, 2021.

15. Ltr. from Ida Fruman, dated Nov. 5, 2021.

16. Ltr. from Inga Fruman, dated Dec. 12, 2021.

17. Ltr. from Yevgeniya Gazman, dated Nov. 23, 2021.

18. Ltr. from Steven Fruman, dated Dec. 10, 2021.

19. Ltr. from Vlad Moldavskyy, dated Jan. 4, 2022.

20. Ltr. from Mariya Pekarsky, dated Nov. 24, 2021.

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Gall v. United States*,
    552 U.S. 38 (2007)............................................................................................................4

*Kimbrough v. United States*,
    552 U.S. 85 (2007).........................................................................................................7–8

*Rita v. United States*,
    551 U.S. 338 (2007)..........................................................................................................6

*Simon v. United States*,
    361 F. Supp. 2d 35 (E.D.N.Y. 2005) ................................................................................9

*United States v. Booker*,
    543 U.S. 220 (2004).......................................................................................................7–8

*United States v. Corsey*,
    723 F.3d 366 (2d Cir. 2013)......................................................................................... 4–5

*United States v. Gross*,
    No. 15 Cr. 769, 2020 WL 1673244 (S.D.N.Y. Apr. 6, 2020).......................................11

*United States v. Gupta*,
    904 F. Supp. 2d 349 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014). ..........................5, 7

*United States v. Jenkins*,
    854 F.3d 181 (2d Cir. 2017)..............................................................................................9

*United States v. Johnson*,
    567 F.3d 40 (2d Cir. 2009)................................................................................................4

*United States v. Johnson*,
    No. 16-CR-547-1, 2018 WL 1997975 (E.D.N.Y. Apr. 27, 2018) ............................................5

*United States v. Nesbeth*,
    188 F. Supp. 3d 179 (E.D.N.Y. 2016) ...........................................................................6–7

*United States v. Nkanga*,
    450 F. Supp. 3d 491 (S.D.N.Y. 2020)..............................................................................11

*United States v. Sloane*,
    308 F.R.D. 85 (E.D.N.Y. 2015).........................................................................................9

*United States v. Stewart,*
   590 F.3d 93 (2d Cir. 2009)..................................................................................................6

*United States v. Stowe,*
   375 F. Supp. 3d 276 (E.D.N.Y. 2019) ...............................................................................10

## **STATUTES & OTHER AUTHORITIES:**

18 U.S.C.:
   § 3553(a) .........................................................................................................................7–8
   § 3553(a)(1) ....................................................................................................................8–9
   § 3553(a)(2) ....................................................................................................................8–9

U.S.S.G. 5E1.2(d)(3)...............................................................................................................12

*Measuring Recidivism: The Criminal History Computation Of The Federal
Sentencing Guidelines,* at p. 28 (2004), https://tinyurl.com/USSC-2004...........................10–11

Defendant Igor Fruman, by and through his counsel, respectfully submits this memorandum ("Sentencing Memorandum"), as well as the accompanying exhibits, in connection with the sentencing hearing scheduled for January 21, 2022 at 2:00 p.m.

## PRELIMINARY STATEMENT

Mr. Fruman is a good, decent, and honorable man who puts his faith, family, and country first.  Mr. Fruman is a law abiding citizen with no criminal record, and, but for the instant offense, has never had any interaction with law enforcement since immigrating to this country in 1994 and becoming a United States citizen in 2004.  Mr. Fruman has also earned the respect of his friends, family, and community.  For example:

- Rabbi Eisenberger, commenting on Mr. Fruman's generosity and community support, observed: "When sponsoring Shabbat dinner which hosts approximately 200 students, Mr. Fruman attended the dinner and was a source of warm encouragement, positivity and a wonderful example to these young men and women. Mr. Fruman is a clearly a family man, leader in his community and supportive of religious institutions." Ex. 6 (Rabbi Fully Eisenberger Ltr.).

- Rabbi Cohen, noting Mr. Fruman's charity, commented: "He has personally helped many people in need of help as a result of the war with clothing, food, medicine, and financing travel expenses for those needing to leave the city during attacks and for families with children in need of respite from the tension and strain upon them in the city. . . . My impressions of Mr. F[ru]man are of a man with a warm and sensitive heart, who is always ready to help others when needed without need of thanks or recognition. He is an openhanded gentleman with a generous and kind heart and spirit." Ex. 11 (Rabbi Menachem Mendel Cohen Ltr.).

- Rabbi Azman providing his views of Mr. Fruman's character, said:  "I am, to the depths of my soul, convinced of the honesty and the decency of this person." Ex. 8 (Rabbi Moshe Reuvan Azman Ltr.).

- Rabbi Misholovin, explaining his experience with Mr. Fruman, stated:  "Igor is an incredibly hardworking and very generous person. He is always helping people in need, both physically and financially. Every year we run a summer day camp for kids and Igor has always been one of our top donors to support our efforts." Ex. 2 (Rabbi Yosef Misholovin Ltr.).

- Mr. Fruman's brother expressed Mr. Fruman's commitment to family, noting: "Today our mother, who is 75 years old with a lot of health problems, has been living in assist[ed] living facility in Florida where Igor resi[des]. Since my family and I live in New York, Igor remains the primary caregiver to our mom, who is tremendously reliant on him for his physical and mental support. He visits her every day, takes her to doctor's appointments and attends to all of her needs. . . . Igor does not carry these daily responsibilities and chores, but rather because of a kind, giving and loving kind of a person he is." Ex. 18 (Steven Fruman Ltr.).

- Mr. Fruman's niece also explained that: "It is impossible to list all of Igor's great qualities, as there are so many, but it is truly undeniable that he is a loyal, truthful, and kind man, and I strongly believe that anyone who has ever met him will tell you the same." Ex. 17 (Fiona Fruman Ltr.).

On September 10, 2021, Mr. Fruman pled guilty to Count 5 of the Superseding Indictment pursuant to a plea agreement with the government. The advisory Sentencing Guidelines ("Guidelines") call for a term of imprisonment of 37 to 46 months. Mr. Fruman has been on home incarceration for *27 months*, since shortly after his arrest in this case on October 10, 2019. During his *more than two years* of home confinement, Mr. Fruman has complied with every obligation of his confinement, and has had no issues reported against him.

We respectfully submit, for several reasons, that the Court should impose a sentence of time served and a reasonable term of supervised release. *First*, the Guidelines range overstates the nature and circumstances of the relevant offense, and it fails to appropriately take into consideration Mr. Fruman's law-abiding life, contributions to his family and community, and character. *Second*, the Guidelines do not account for the severe collateral consequences that Mr. Fruman and his children, wife, and aged mother would endure if he is further imprisoned. *Third*, the financial hardship, irreparable reputational damage, and time spent on home incarceration serve as adequate deterrence. *Fourth*, Mr. Fruman's age, lack of criminal history, acceptance of responsibility, everlasting devotion to his family and religion, and commitment to rebuilding his career eliminate the possibility of recidivism.

These reasons support a sentence of time served and a reasonable term of supervised release, a sentence that is sufficient, but not greater than necessary, to comply with the purposes of the law.

## BACKGROUND

Mr. Fruman is a 55-year-old self-made businessman.  In 1994, Mr. Fruman and his young family fled from food insecurity and religious persecution in Ukraine and immigrated to the United States for opportunities and a better life.  Upon his arrival, Mr. Fruman, with help from his brother, Steven, established a business specializing in importing and exporting food and other goods from all over the world.  After several years of hard work, Mr. Fruman's business took off, allowing him to financially support his family and live the American dream.  As the attached letters of support make plain, as Mr. Fruman became more and more successful professionally, he never forgot his roots and prioritized his family and community above everything else.

Over the years, Mr. Fruman embraced the entrepreneurial spirit that eventually led him to consider a cannabis partnership with others who had the experience and financial resources to propel the venture forward.  The venture entailed significant startup costs, requiring the partners to seek investors, both inside and outside of the United States.  As part of Mr. Fruman's efforts to secure funding, Mr. Fruman promised that part of the business plan would include making donations to politicians in key states where the venture would ultimately need licensing to open marijuana dispensaries.  One of the lenders was a foreign national—not a United States citizen.  Soliciting money from such an individual with the promise of using it to make political donations is a crime, and Mr. Fruman deeply regrets his conduct in committing the instant offense.  This has been a life lesson that he will never forget, and the Court can be assured that Mr. Fruman will never again appear before this or any other court in a criminal setting.

## ARGUMENT

The Court should order a sentence of time served and a reasonable term of supervised release. The Guidelines are driven by the amount of money that Mr. Fruman received, but do not take into account Mr. Fruman's background and life-long conduct, nor do they accurately consider the circumstances of his offense. The resulting Guidelines level and sentencing range meaningfully overstate the seriousness of the offense and should be significantly discounted when considering an appropriate sentence. Moreover, sentencing Mr. Fruman to further incarceration during the ongoing pandemic would unfairly punish Mr. Fruman's family, all of whom depend on Mr. Fruman for financial, emotional, and physical support during this difficult time. In light of the extremely positive life that Mr. Fruman has lived, his total lack of criminal history, and his conduct in the instant case: taking responsibility for his actions and behaving as a model citizen while on home incarceration, the Court should impose a sentence of time served and a reasonable term of supervised release.

### A.  The Guidelines are inappropriately high because of the fraud loss amount.

As the Court is well aware, the Guidelines serve as a "starting point" and an "initial benchmark," but a "court may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013). Indeed, the Guidelines are one of several factors a court must consider in its "individualized assessment" of the appropriate sentence based on the facts presented and § 3553(a) factors. *Gall*, 552 U.S. at 49–50; *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

The Guidelines offense level calculated in the plea agreement and the Pre-Sentencing Report ("PSR") is driven largely by the amount of money loaned to Mr. Fruman by the foreign national. That offense level calls for a sentence of imprisonment that does not accurately reflect all of the background and characteristics of Mr. Fruman, nor the unique circumstances of the

offense. The conduct at issue in this case is a stark example of how the fraud Guidelines at times are flawed and fail to take into account significant information about the offense. Indeed, the Second Circuit has cautioned that the loss enhancement is "fundamentally flawed," *Corsey*, 723 F.3d at 380, because it fails to consider actual conduct and, thus, "maximiz[es] the risk of injustice." *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014).[1] Here, as noted in the PSR, Mr. Fruman solicited and received a $1,000,000 loan from a foreign national to help him and his business partners start a cannabis-based company. To be sure, the main purpose of the loan was to start a business, and, after receiving the loan, Mr. Fruman used most of the proceeds of that loan to pay down debt relating to the business venture. Nevertheless, the 14-point enhancement under 2B1.1(b)(1)(H) applies in full, the same as if the full $1,000,000 loan had been used for donations or the same as if Mr. Fruman had defrauded investors or even outright stolen the money. Such a result highlights a flaw in the design of the Guidelines, but unfortunately accounts for two-thirds of the overall offense level in this case.

---

[1] In *United States v. Johnson*, the court listed the numerous flaws associated with the Guidelines' application to white-collar crimes:

> As far as this Court can tell, the Sentencing Commission's loss-enhancement numbers do not result from any reasoned determination of how the punishment can best fit the crime, nor any approximation of the moral seriousness of the crime. . . . Given the feeble underpinnings of the loss enhancement, it is particularly galling that this factor is often more or less *solely* responsible for a white-collar offender's Guidelines sentence. . . . That this situation continues unabated is a great shame for the many offenders sentenced under this Guideline who do not receive a sentence that makes any sense for the actual crime of conviction.

No. 16-CR-547-1 (NGG), 2018 WL 1997975, at *3–*4 (E.D.N.Y. Apr. 27, 2018) (Garaufis, J.); *see also Corsey*, 723 F.3d at 378–79 & 380 (Underhill, J., concurring) (warning that "the loss guideline is fundamentally flawed, especially as loss amounts climb").

Here, the Court has the authority to look past the Guidelines range and consider all of the other mitigating factors in reaching a just sentence. All of these mitigating factors point towards a sentence of time served, a sentence that is "'sufficient, but not greater than necessary, to comply with' the basic aims of sentencing." *Rita v. United States*, 551 U.S. 338, 348 (2007) (quoting 18 U.S.C. § 3553(a)).

> **B.     Mr. Fruman's family would suffer unfair collateral consequences if he is sentenced to additional time in prison.**

Mr. Fruman is the primary caretaker for his elderly mother, wife, and children. Mr. Fruman's youngest daughter is in sixth grade, and his youngest son is in tenth grade. Both of Mr. Fruman's children rely almost exclusively on Mr. Fruman for support with day-to-day activities, school, and other extracurriculars because their mother does not live in their family home.

Mr. Fruman's current financial condition is also strained and will obviously be worsened if he is incarcerated. The fallout from this case and the COVID pandemic have presented extraordinary challenges to Mr. Fruman's business, forcing Mr. Fruman to support himself and his family using his life savings. Indeed, Mr. Fruman recently sold assets to be able to continue to support his family financially. Notwithstanding these challenges, he is in a position to start to rebuild his life and put the past few years behind him. But imposing a term of incarceration would render that impossible, at least for the foreseeable future. If Mr. Fruman is sentenced to additional time in prison, he will likely have to sell his apartment to pay for his children's livelihoods while he is imprisoned. On the other hand, as the world economy slowly recovers, if Mr. Fruman is given the chance to rebuild his life and business without additional time in prison, he and his family have a high likelihood of future success. *See United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence."); *see also United States v. Nesbeth*, 188 F.

Supp. 3d 179, 180 (E.D.N.Y. 2016) (emphasizing the importance of considering collateral consequences in determining a sentence).

Justice is not served in this case by imposing additional time in prison. While any defendant sentenced to a term of incarceration faces a more difficult road because of time spent in prison, this case is unique. In addition to the length of time this case has taken because of the COVID pandemic, there has been outsized publicity and focus on Mr. Fruman that has made living a "normal" private life almost impossible. In light of the timing and Mr. Fruman's brief encounters with political figures, Mr. Fruman has been frequently maligned in the press. Many papers and news programs cite his name in the same breath as his co-defendant, Lev Parnas, yet their character and background are worlds apart. Mr. Fruman is an American citizen who has lived and worked in the United States for most of his adult life and has never been accused of fraud or any other wrongdoing. Nevertheless, the media routinely describes him as "Soviet-born" or "a Russian Crony" alongside Mr. Parnas, who is charged separately with financial fraud. This relentless mischaracterization of Mr. Fruman has irreparably damaged him and his business. When Mr. Fruman's name is typed into a search engine, the results will not reveal his decades of positive work and support for his community but, instead, his most shameful lapse in judgment and brief encounter with the criminal justice system. "As to specific deterrence, it seems obvious that, having suffered such a blow to his reputation, [the defendant] is unlikely to repeat his transgressions, and no further punishment is needed to achieve this result." *Gupta*, 904 F. Supp. at 355.

    **C.    Under § 3553(a) a sentence of time served satisfies the goals of sentencing and is otherwise a just sentence.**

The federal sentencing statute "permits the court to tailor the sentence in light of § 3553(a) concerns." *United States v. Booker*, 543 U.S. 220, 245–46 (2004); *Kimbrough v. United States*,

552 U.S. 85, 101 (2007) ("The [sentencing] statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing . . ."). Under § 3553(a), courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed" to "reflect the seriousness of the offense." 18 U.S.C. § 3553(a). It must then "afford adequate deterrence to criminal conduct" in light of "the kinds of sentences available." *Id.* Here, as discussed above, adequate deterrence has already been achieved and the nature, circumstances, and seriousness of the offense warrant a non-Guidelines sentence of time served. Section 3553(a)(1), (2)(A) & (B).

The first factor instructs the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). At the outset, the nature and circumstances of the offense do not align with Mr. Fruman's personal history and character. It bears repeating that Mr. Fruman is a devoted family man who left Ukraine to build a better life for himself and his family. This is not a case where Mr. Fruman embarked on an effort to influence the outcome of American elections using foreign money. Mr. Fruman solicited money from a foreign national to start a venture that included a business strategy of supporting politicians to gain visibility. While this solicitation is something that Mr. Fruman should not have done, it is distinguishable from solicitation cases where the primary goal of the defendant is to influence elections using foreign money. Moreover, Mr. Fruman's history and the letters written to the court on his behalf clearly demonstrate that his behavior during the commission of this offense was atypical and uncharacteristic. Hence, while the conduct here is serious, the nature and circumstances of the offense counsel in favor of a non-Guidelines sentence of time served.

### 1. The Guidelines' range overstates the seriousness of the offense.

The nature, circumstances, and seriousness of the offense justify a non-Guidelines sentence of time served for multiple reasons. *See* 18 U.S.C. § 3553(a)(1) & (2). First, as stated above, the money solicited by Mr. Fruman from the foreign national was a loan that Mr. Fruman is obligated to repay and, because the cannabis venture ultimately failed, he will never see any returns. Thus, Mr. Fruman did not financially gain from this offense and, in fact, is currently involved in a legal dispute regarding the payment of the loan. Second, while a portion of the loan was used to pay for political venues, the majority of the loan money went toward paying off credit card debt incurred by Mr. Fruman and his business partners in the course of starting the cannabis venture.

### 2. Just punishment and adequate deterrence have already been achieved.

The Court can be assured from Mr. Fruman's past behavior, as well as his behavior during the pendency of this case, that Mr. Fruman's first encounter with the criminal justice system will also be his last. Mr. Fruman is a 55-year-old, first-time offender who has accepted full responsibility for his crime and deeply regrets his involvement in this offense. His age alone counsels in favor of a non-Guidelines, noncustodial sentence. *See United States v. Sloane*, 308 F.R.D. 85, 88 (E.D.N.Y. 2015) (sentencing 53-year-old to time served and supervised release, not 24–30 months' Guideline range, because "[a]t age fifty-three, [he] is unlikely to recidivate"); *see also Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (stating that the Guidelines are an "imperfect measures of how well a sentence protects the public from further crimes of the [older] defendant"). Indeed, the Second Circuit has accepted the Sentencing Commission's conclusion that recidivism decreases with age, and over 90% of first-time offenders over the age of 50 never commit another crime. *United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017); *see also* United States Sentencing Commission, *Measuring Recidivism: The Criminal History*

*Computation Of The Federal Sentencing Guidelines,* at p. 28 (2004) (stating that for those defendants in Criminal History Category I, the recidivism rate for defendants who are between the ages of 41 and 50 is 6.9 percent whereas the recidivism rate for such defendants who are between the ages of 31 and 40 is greater than 12 percent), *available at* https://tinyurl.com/USSC-2004.

Age aside, Mr. Fruman and his family have already suffered significant consequences related to the offense. Directly after his arrest, Mr. Fruman was detained for eight days at the maximum-security Alexandria Detention Center while awaiting the conditions of his bond. In addition, he has spent the last 27 months under home confinement, and the publicity of the case has caused financial hardship and damaged future business opportunities. In fact, the notoriety and reputational damage that accompanied his offense has already caused his business to experience negative returns and forced him to spend his savings and resort to selling his assets to care for himself and his family. This financial turmoil has also rendered him unable to repay the $1,000,000 loan that gave rise to the instant offense, which has led to an ongoing legal dispute that will require him to pay legal fees in addition to the money already owed.

A custodial sentence would not only prevent Mr. Fruman from caring for his children and mother during his incarceration, but it would also hinder his ability to rebuild his company and support his family in the long-term. *See United States v. Stowe*, 375 F. Supp. 3d 276, 280 (E.D.N.Y. 2019) (concluding that a noncustodial sentence would better position the defendant to work toward his career goal and provide for his family). As Mr. Fruman's brother eloquently stated in his letter, hopefully "what Igor's children witness and learn from this experience is not an act of further punishment, but rather a lesson I once learned from Igor, compassion, understanding and that everyone deserves a second chance." Ex. 18 (Steven Fruman Ltr.).

Accordingly, additional prison time would contravene the ultimate goals of § 3553(a) and serve no just purpose.[2]

### D. Mr. Fruman's financial resources are limited due to the length of his home confinement and no fine should be imposed.

The PSR recommends a $15,000 fine; however, because Mr. Fruman inadvertently did not send his net worth statement to the Probation Department, that recommendation does not fully consider Mr. Fruman's financial condition and ability to pay. For the Court's *in camera* review and consideration, Mr. Fruman will provide a copy of his completed net worth statement to the Court and the Probation Department in advance of his sentencing.

Unfortunately, due to the reputational destruction caused by the media's coverage of this case and Mr. Fruman's inability to travel or actively run his business during his home incarceration, the value of his business is net negative and he has nearly depleted his life savings to pay for his and his family's expenses. He has also incurred several thousand dollars in credit

---

[2] Another factor that counsels against incarceration is inmates' acute exposure to a rampantly infectious and deadly disease which has led to a number of Courts in this district to recognize that "the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals." *United States v. Jones*, No. 15 Cr. 95 (AJN), Dkt. No. 2865, at 6 (S.D.N.Y. May 26, 2020); *see also United States v. Gross*, No. 15 Cr. 769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020); *United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. No. 2523, at 8. As a result, Courts have granted significant variances at sentencing alone based on the harsh conditions. *See, e.g., United States v. Polanco*, 20 Cr. 94 (AJN) (imposing a sentence of time served, four-and- a-half months, for illegal reentry and false statement to an ICE officer, a variance from Guidelines of 10–16 months based in part on conditions at the prison during the pandemic and the likelihood that the defendant would remain detained until deported); *United States v. Paez Vazquez*, 20 Cr. 28 (JPO) (imposing a sentence of time served, approximately six months, despite Guidelines range of 87–108 months, taking into account difficult conditions in detention during the pandemic); *United States v. Morgan*, 19 Cr. 209 (RMB) (considering brutal conditions of prison before and during pandemic and imposing sentence of time served—less than 15 months—where stipulated Guidelines range was 33–41 months' imprisonment and actual applicable Guidelines range was 41–51 months' imprisonment); *United States v. Casillas*, 19 Cr. 863 (VSB) (imposing a sentence of time-served—approximately five months—where Guidelines range was 15–21 months' imprisonment, in part based on prison conditions during the pandemic); *United States v. Pierson*, 14 Cr. 855 (LTS) (time-served sentence of less than two months where Guidelines advised 6–12 twelve months' imprisonment).

card debt and has been forced to sell assets to continue supporting his family. So while Mr. Fruman has high monthly expenses, his resources for paying these expenses are declining by the month, and he will very soon be forced to sell his apartment to reduce his expenses. Mr. Fruman supports his wife, his mother, and his children, all of whom are reliant on him for financial support. And while he has continued to pay his bills over the past two years, he is nearly out of money, and will likely be completely out of money in the near future. His hope, of course, is that he is able to devote his time to his business and start to build back his financial livelihood, but that remains to be seen in the current environment. Thus, given Mr. Fruman's financial condition, it is respectfully requested that the Court not impose a fine. *See* U.S.S.G. 5E1.2(d)(3) (the burden that the fine places on the defendant and his dependents relative to alternative punishments).

## CONCLUSION

For the foregoing reasons, Mr. Fruman respectfully submits that a sentence of time served and a reasonable term of supervised release is a just and appropriate sentence in this case.

Dated:  January 7, 2022                     Respectfully submitted,

                                            CADWALADER, WICKERSHAM & TAFT LLP

                                            By:   /s/ Todd Blanche

                                            Todd Blanche
                                            Sara Bussiere
                                            Timbre Shriver

                                            200 Liberty Street
                                            New York, NY 10281
                                            Tel.:  (212) 504-6000
                                            Fax:  (212) 504-6666
                                            todd.blanche@cwt.com
                                            sara.bussiere@cwt.com
                                            timbre.shriver@cwt.com

                                            *Attorney for Defendant*